## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROGELIO GONZALEZ**                                               **CIVIL ACTION**

**VERSUS**                                                                      **NO. 21-1155**

**DARREL VANNOY, WARDEN**                                **SECTION: "G"(1)**

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, Rogelio Gonzalez, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED**.

On October 16, 2013, petitioner was convicted under Louisiana law of aggravated rape of a juvenile and sexual battery of a juvenile.[1] On November 14, 2013, he was sentenced to life imprisonment on the aggravated rape conviction and to twenty-five years imprisonment on the sexual battery conviction. It was ordered that those sentences be served concurrently and without benefit of parole, probation, or suspension of sentence.[2]

After petitioner was granted an out-of-time appeal,[3] the Louisiana Fifth Circuit Court of Appeal affirmed both of his convictions, as well as his sentence on the aggravated rape conviction; however, the court vacated his sentence on the sexual battery conviction and remanded the matter

---

[1] State Rec., Vol. 6 of 8, transcript of October 16, 2013, pp. 47-48; State Rec., Vol. 1 of 8, minute entry dated October 16, 2013.

[2] State Rec., Vol. 6 of 8, transcript of November 14, 2013; State Rec., Vol. 1 of 8, minute entry dated November 14, 2013.

[3] State Rec., Vol. 1 of 8, Order dated September 12, 2014.

for resentencing on that conviction.[4]  On September 23, 2016, the Louisiana Supreme Court denied his related writ application.[5]

In the interim, on January 7, 2016, the district court had resentenced petitioner on remand to a concurrent term of ten years imprisonment without benefit of parole, probation, or suspension of sentence on the sexual battery conviction.[6]  After he was granted another out-of-time appeal,[7] the Louisiana Fifth Circuit Court of Appeal affirmed that new sentence,[8] and the Louisiana Supreme Court denied his related writ application.[9]

Petitioner then filed with the state district court an application for post-conviction relief,[10] which was denied.[11]  His related writ applications were likewise denied by the Louisiana Fifth Circuit Court of Appeal[12] and the Louisiana Supreme Court.[13]

On June 7, 2021, petitioner filed the instant federal application seeking habeas corpus relief.[14]  The state filed a response conceding that the application is timely; however, the state argued that petitioner is not entitled to relief because (1) he is no longer in custody with respect to the sexual battery conviction and (2) his claims have no merit.[15]

---

[4] State v. Gonzalez, 173 So. 3d 1227 (La. App. 5th Cir. 2015); State Rec., Vol. 2 of 8.
[5] State v. Gonzalez, No. 2015-KO-1771 (La. Sept. 23, 2016); State Rec., Vol. 7 of 8.
[6] State Rec., Vol. 2 of 8, minute entry dated January 7, 2016.
[7] State Rec., Vol. 3 of 8, Order dated March 2, 2017.
[8] State v. Gonzalez, 231 So. 3d 954 (La. App. 5th Cir. 2017); State Rec., Vol. 3 of 8.
[9] State v. Gonzales [sic], 252 So. 3d 480 (La. 2018); State Rec., Vol. 3 of 8.
[10] State Rec., Vol. 3 of 8.
[11] State Rec., Vol. 4 of 8, Order dated October 7, 2020.
[12] Gonzalez v. Vannoy, No. 20-KH-401 (La. App. 5th Cir. Dec. 8, 2020); State Rec., Vol. 4 of 8.
[13] Gonzalez v. Vannoy, 314 So. 3d 829 (La. 2021); State Rec., Vol. 4 of 8.
[14] Rec. Doc. 1.
[15] Rec. Doc. 9.

# I.  Custody Requirement

Federal district courts have jurisdiction to entertain petitions for writs of habeas corpus only from persons who are "**in custody** in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3) and 2254(a) (emphasis added).  The United States Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." Maleng v. Cook, 490 U.S. 488, 490-91 (1989).  Once a sentence imposed for a conviction has "fully expired," a petitioner is no longer considered to be "in custody" with respect to that conviction. Id. at 492.

The state argues that petitioner's sentence on the sexual battery conviction fully expired prior to the filing of the instant federal application.  As noted, with respect to that conviction, petitioner was sentenced to a concurrent term of ten years imprisonment without benefit of parole, probation, or suspension of sentence.[16]  However, the state submitted evidence showing that his "full term date" for that conviction was **May 15, 2021**.[17] Although petitioner was afforded an opportunity to file a reply to the state's response,[18] he has not done so.  Therefore, he has neither countered the state's argument nor challenged its evidence concerning the expiration of that sentence.[19]

---

[16] State Rec., Vol. 2 of 8, minute entry dated January 7, 2016.

[17] Rec. Doc. 9-1.

[18] See Rec. Doc. 4, p. 2 ("**IT IS FURTHER ORDERED** that the petitioner, ROGELIO GONZALEZ, may file a reply memorandum within thirty (30) days after the filing of the answer or response by the District Attorney.").

[19] If petitioner attempts to do so in any objections to this Report and Recommendation, then he bears the burden of proof to show that he meets the custody requirement with respect to that conviction.  See United States v. Bustillos, 31 F.3d 931, 933 (10th Cir. 1994) ("The party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the court's jurisdiction.  The facts supporting jurisdiction must be affirmatively alleged, and if challenged, the burden is on the party claiming that the court has subject matter jurisdiction.").

Accordingly, the undersigned finds that petitioner's sentence on the sexual battery conviction fully expired before the instant application was filed on **June 7, 2021**.[20]  Although he was (and remains) in custody with respect to his aggravated rape conviction at the time this application was filed, that does not change the fact that he was no longer in custody with respect to sexual battery conviction for which his concurrent sentence imposed had already expired.  Mays v. Dinwiddie, 580 F.3d 1136, 1140-41 (10th Cir. 2009); Sweet v. McNeil, 345 F. App'x 480 (11th Cir. 2009); Mendiola v. Stephens, Civ. Action No. 1:14-261, 2016 WL 1104854, at *3 (S.D. Tex. Feb. 23, 2016) ("When a prisoner is serving concurrent sentences and the shorter sentence has expired – but the prisoner is still incarcerated for the longer sentence – the prisoner is no longer considered to be in custody for the expired sentence."), adopted, 2016 WL 1090238 (S.D. Tex. Mar. 21, 2016); Brian R. Means, Federal Habeas Manual § 1:13 (May 2022 Update) ("A petitioner serving concurrent sentences is in 'custody' for purposes of habeas corpus even though he attacks only one of his sentences and would not be entitled to immediate release if relief were granted. But the petitioner is not in custody on a concurrent sentence that has expired." (citations omitted)).

For these reasons, this Court does indeed lack subject matter jurisdiction to entertain petitioner's challenge to his sexual battery conviction.  See, e.g., Romero v. Davis, 813 F. App'x 930, 932 (5th Cir. 2020); Conley v. Quarterman, No. 3:07-CV-1743, 2008 WL 17776449 (N.D. Tex. Apr. 14, 2008). Therefore, this Report and Recommendation will address only the claims applicable to his aggravated rape conviction.

---

[20] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner has stated under penalty of perjury that he placed his application in the prison mailing system on June 7, 2021.  Rec. Doc. 1, p. 13.

## II.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); accord Langley v. Prince, 926 F.3d 145, 155 (5th Cir. 2019) (noting that the AEDPA imposes a "relitigation bar" on claims adjudicated on the merits by the state court).  The applicable standards of review are now as follows.

As to pure questions of fact, factual findings are presumed to be correct and a federal court must give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). However, a federal habeas court must be mindful that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; accord Harrington v. Richter, 562 U.S. 86, 102-03 (2011) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); Langley, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was well understood and comprehended

> in existing law beyond any possibility for fairminded disagreement.  In other words, the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

Langley, 926 F.3d at 156 (citations and quotation marks omitted).  "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief."  Id. at 170.

Further, the Supreme Court has expressly cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.  Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.   AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Woodall, 572 U.S. at 426 (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

In summary, "AEDPA prevents defendants – **and federal courts** – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010) (emphasis added).  The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  Woodall, 572 U.S. at 417.

### III.  Facts

On petitioner's first direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

In April 2011, the Mansfield Police Department in Texas received a report of a sexual assault that occurred several years earlier in Kenner, Louisiana. After interviewing the victim, E.R.,[FN 1] who was then living in Texas and was 15 years old at the time of the interview, the Mansfield Police Department contacted the Kenner Police Department, which proceeded to further investigate the matter.

> [FN 1] The victim's initials are used under the authority of La. R.S. 46:1844(W)(3), which allows this Court to identify a crime victim who is a minor or a victim of a sex offense by using his or her initials.

During the investigation, Detective Lashonda Woodfork with the Kenner Police Department interviewed the victim, who recounted what happened to her, her mother, her grandmother, and uncle. Detective Woodfork also reviewed the victim's recorded Texas forensic interview and learned that the incident occurred at E.R.'s grandmother's house in Kenner sometime between October 2005 and April 2006, while E.R. was attending A.C. Alexander Elementary School. During E.R.'s Texas interview, she stated that she was lying on the bed in her grandmother's room when her grandmother's brother, who E.R. knew only as "Uncle," came into the room and took off her pants and underwear. According to E.R., "Uncle" then took off his pants and underwear and tried to put his penis in her vagina, but it did not "fit," at which time he put his fingers on the inside of her vagina. Subsequently, during Detective Woodfork's investigation, E.R. identified Defendant as "Uncle" in a family photograph. Defendant was later arrested.

At trial, E.R. corroborated the information she gave during her Texas interview. She testified that while she was attending A.C. Alexander Elementary School she was sexually abused by Defendant at her grandmother's house. She recounted that after her grandmother had left the house, Defendant came into the room where she was lying on the bed watching television and removed both his and her pants and underwear and touched her vagina with his penis. She explained that she felt a sharp pain in the lower part or bottom of her vagina and that it hurt. E.R. further testified that Defendant touched around her vagina with his fingers. E.R. stated that Defendant stopped when he heard her Uncle Jonathan come into the house. She stated that upon hearing the front door, Defendant pulled up his pants and walked out of the room. E.R. went to the bathroom and then followed Jonathan around the rest of the day. E.R. testified that Jonathan did not see what Defendant did to her and that she did not tell him what had happened.

Jonathan Gonzalez testified that he lived with his grandmother in Kenner in 2005 and 2006 while he attended John Quincy Adams Middle School. He stated that E.R. would be at the house when he came home from school and that Defendant would watch E.R. when no one was home. He recalled a day when he came home from school and found Defendant present at the house and E.R. visibly upset and sad; however, E.R. never told him why she was upset.

E.R. testified that she never told anyone about the incident until she told her best friend in 2011, when she was living in Texas. She later told her brother and

mother, at which time the police were called and she recounted the incident to the police.  E.R. explained that she developed nightmares after the incident in which she was being sexually assaulted by someone but she could not see his face.

Defendant also testified at trial.  He testified that he did sheetrock and taping work and was very busy after Hurricane Katrina, which hit the area in August 2005.  He admitted that he visited his sister's home but noted that it was not often and stated that he was never at the home alone with E.R.  He claimed that all of E.R.'s statements were lies.[21]

### IV.  Petitioner's Claims

### A.  Ineffective Assistance of Counsel

Petitioner's first three claims allege that his trial counsel was ineffective.  The clearly established federal law governing such claims is <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In <u>Strickland</u>, the United States Supreme Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction … has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction … resulted from a breakdown in the adversary process that renders the result unreliable.

<u>Id.</u> at 697.

When assessing whether counsel's performance was deficient, a federal court must always be mindful that "<u>Strickland</u> does not guarantee perfect representation, only a reasonably competent attorney."  <u>Harrington v. Richter</u>, 562 U.S. 86, 110 (2011).  Therefore, "[t]o establish deficient performance, a person challenging a conviction must show that counsel's representation fell below

---

[21] <u>State v. Gonzalez</u>, 173 So. 3d 1227, 1230-31 (La. App. 5th Cir. 2015); State Rec., Vol. 2 of 8.

9

an objective standard of reasonableness." Id. at 104 (quotation marks omitted).  Moreover, the

Supreme Court has cautioned:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

Strickland, 466 U.S. at 689 (citations and quotation marks omitted).

Strickland's prejudice component is no less exacting.  The Supreme Court has explained:

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently.  Instead, Strickland asks whether it is reasonably likely the result would have been different.  This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case.  The likelihood of a different result must be substantial, not just conceivable.

Richter, 562 U.S. at 111-12 (citations and quotation marks omitted).

In the instant case, petitioner asserted his ineffective assistance of counsel claims to the

state courts on collateral review.  The state courts denied those claims on the merits as follows.

The state district court denied relief, stating:

The petitioner has a Sixth Amendment right to effective counsel. Defense counsel's performance will be evaluated by reviewing courts under the familiar test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To be successful in arguing ineffective assistance of counsel, a petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. Both prongs of the Strickland test must be established before relief will be granted.

There is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel does not mean errorless counsel and the reviewing court does not judge counsel's performance based on hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

The Supreme Court has emphatically directed that, "in evaluating the performance of counsel, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limits on investigation." Strickland, 466 U.S. at 690-691, 104 S.Ct. 2052, 80 L.Ed.2d 674.

Mindful of controlling federal and state jurisprudence, the court now turns to petitioner's specific claims of ineffective assistance of counsel.

Claim #1

Petitioner first claims that counsel was ineffective for failing to consult him of his right to a jury trial. He claims that he did not knowingly or intelligently waive his right to a jury trial, that he was incompetent to assist his attorney due to his language barrier, and that counsel told him what to do, rather than consult with him.

The court finds these allegations self-serving, speculative, and conclusory. As the State points out in its response, the court conducted a colloquy with petitioner to ensure that he knowingly and intelligent waived his right to a jury trial, all completed through an interpreter. Through this interpreter, petitioner confirmed that he understood that he had a right to trial by judge or jury, and that it was his decision to have a trial by judge. (See Appellate record, pp. 194-196.) Additionally, petitioner does not prove that had he elected a jury trial, the outcome would have been different.

Petitioner fails to prove any deficiency in counsel's performance, or any prejudice resulting. Thus, this claim is denied.

Claim #2

Petitioner next claims that counsel was ineffective in failing to object to petitioner being charged with both aggravated rape and sexual battery, claiming a double jeopardy violation. Petitioner argues that counsel; should have filed a motion to quash the sexual battery charge.

The court finds no merit to this claim, as no double jeopardy occurred. As the State points out, in determining a double jeopardy violation, under the Blockburger test, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires a proof of fact which the other does not." State v. Knowles, 392 So.2d 651, 654 (La. 1980), quoting Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182 (1932).

In this case at hand, petitioner was accused in the bill of indictment of two separate and distinct sexual offenses against the victim. The court finds no deficient performance in counsel's performance, and no prejudice resulting. This claim will be denied.

Claim #3

Petitioner next claims that counsel was ineffective in failing to secure expert testimony to aid defense at trial, and failed to ensure a Daubert hearing on State's expert regarding "delayed disclosure" and other CSAAS (Child Abuse Accommodation Syndrome) phenomena.

As to the expert testifying to aid defense at trial, the court finds this claim speculative and conclusory. Petitioner fails to present any facts or evidence that would affect and change the outcome of trial.

As to the claim regarding the State's expert, the court finds no merit. As explained in the State's response, the State did not present any evidence regarding CSAAS. The State's expert, Carrie Paschall, had qualifications set forth on the record prior to her testimony and was qualified with no objection. She testified in the fields of child forensic interviews and disclosure interview patter[n]s, and recounted her interview with E.R. Petitioner fails to explain how a Daubert hearing would have changed the outcome or affected the trial.

Petitioner fails to prove any deficiency in trial counsel's performance, or any prejudice resulting. This claim is denied.

....

Under LSA-C.Cr.P. art. 930.2, the petitioner in an application for post-conviction relief shall have the burden of proving that relief should be granted. Petitioner clearly fails to meet this burden.

Under LSA-C.Cr.P. art. 929, if the court determines that the factual and legal issues can be resolved based up the application and answer, and supporting documents, the court may grant or deny relief without further proceedings. On the showing made, petitioner is not entitled to relief sought.[22]

On supervisory review of that denial, the Louisiana Fifth Circuit Court of Appeal likewise

denied relief, holding:

---

[22] State Rec., Vol. 4 of 8, Order dated October 7, 2020.

Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. State v. Casimer, 12-678 (La. App. 5 Cir. 3/13/13), 113 So.3d 1129, 1141. To prove ineffective assistance of counsel under the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must show: 1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevail professional norm; and 2) that the deficient performance prejudiced the defense. To prove prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Casimer, 113 So.3d at 1141 (citing Strickland v. Washington, supra).

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. State v. Griffin, 14-450 (La. App. 5 Cir. 12/16/14), 167 So.3d 31, 48, writ denied, 15-148 (La. 11/20/15), 180 So.3d 315. Therefore, defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id; Strickland, supra. The Sixth Amendment does not guarantee errorless counsel or counsel judged ineffective in hindsight. Griffin, 167 So.3d at 41.

In his first ineffective assistance of counsel claim in his APCR [application for post-conviction relief], relator argues that his trial counsel was ineffective for failing to consult him on his right to a jury trial. However, the record shows that prior to the start of trial on October 15, 2013, the trial court verbally advised relator, through an interpreter, of his right to a jury trial, and relator indicated that he wished to waive his right to a jury trial and proceed to a judge trial. Therefore, even if relator's allegation that his counsel failed to advise him of his right to jury trial was correct, relator has not shown that he suffered any prejudice since he was advised by the trial court. [FN 2] Thus relator's argument in claim one is without merit.

> [FN 2] We further note that relator filed a Motion to Waive Jury Trial in the trial court indicating that defense counsel explained his options and relator chose a bench trial in lieu of a jury trial. Attached to the motion is a waiver in English and also translated into Spanish indicating that relator understood he was entitled to choose whether he wanted a jury trial or a bench trial. Although relator signed the waiver, he asserts that he is illiterate and is unable to read English or Spanish.

In his second claim in his APCR, relator asserts that trial counsel was ineffective for failing to object to the State charging him with both aggravated rape and sexual battery, because it is a double jeopardy violation. However, we agree with the trial court that the record does not show that a double jeopardy violation occurred and thus, trial counsel was not ineffective for failing to make this objection. This argument is without merit.

In his third claim, relator argues that trial counsel was ineffective for failing to request a Daubert[FN 3] hearing on the State's expert witness regarding "delayed disclosure" or other child abuse accommodation syndrome phenomena, and for failing to secure expert testimony to assist in impeaching the victim's "inconsistent

uncorroborated story." After review, we find relator has not shown he is entitled to relief on this claim. Relator has not presented any evidence to show that trial counsel's failure to call an expert witness or to challenge the State's expert prejudiced his defense at trial.

> [FN 3] Daubert v. Merrill [sic] Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[23]

The Louisiana Supreme Court then likewise denied relief, succinctly holding: "Denied. Applicant fails to show that he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."[24]

Where, as here, a habeas petitioner's ineffective assistance of counsel claims were denied on the merits in the state courts, he faces even greater obstacles to obtaining relief on the claims in federal court. Specifically, because such claims present mixed questions of law and fact, the petitioner is entitled to federal habeas relief only if he shows that the state court decision denying the claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).

Under that deferential standard of review, the determinative factor is not simply whether counsel was ineffective in the independent view of the federal court; rather, it is "whether the state court's application of the Strickland standard was unreasonable." Richter, 562 U.S. at 101. Therefore, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. **The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard**." Id. at 105 (emphasis added). That makes a petitioner's already difficult task even more so, because it requires the federal court to accord the state court

---

[23] Gonzalez v. Vannoy, No. 20-KH-401 (La. App. 5th Cir. Dec. 8, 2020); State Rec., Vol. 4 of 8.
[24] Gonzalez v. Vannoy, 314 So. 3d 829 (La. 2021); State Rec., Vol. 4 of 8.

decision "a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Id. at 101; see also id. at 105 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."). As a result, in effect, the federal court must "afford **both** the state court **and** the defense attorney the benefit of the doubt." Woods v. Etherton, 578 U.S. 113, 117 (2016) (emphasis added; quotation marks omitted).

For the following reasons, the Court finds that, under that doubly deferential standard of review, it cannot be said that relief is warranted with respect to any of petitioner's ineffective assistance of counsel claims.

Petitioner states his first claim as follows: "Trial counsel was ineffective assistance of counsel for failing to consult petitioner on his right to a jury trial."[25] He further alleges: "Petitioner contends that his trial counsel did not give him a choice of whether to assert his right to a jury trial, but told him that he had to go to a judge trial in his situation, but was better off anyway, since the judge knew the law better than 12 average people as jurors."[26]

To the extent that petitioner is contending that counsel was ineffective failing to advise him that he had a right to trial by jury, that contention requires little discussion. Even assuming that counsel's performance was deficient in that respect, petitioner was not prejudiced by that failure. As noted, the state courts found that the trial court, immediately prior to trial, **independently** advised petitioner of that right through an interpreter, and he stated on the record that he wanted a bench trial. That factual finding is fully supported by the transcript.[27] Further, based on that

---

[25] Rec. Doc. 1, p. 5.
[26] Id.
[27] State Rec., Vol. 5 of 8, transcript of October 15, 2013, pp. 8-9.

factual finding, the state courts concluded that petitioner therefore was not prejudiced by counsel's failure, and that legal conclusion is not unreasonable.

To the extent that petitioner is contending that counsel was ineffective for assuring him that a bench trial was preferable to a jury trial in this case, it must be noted that an attorney's decision "to recommend a bench trial to his client is the type of act for which <u>Strickland</u> requires that judicial scrutiny be highly deferential." <u>Green v. Lynaugh</u>, 868 F.2d 176, 178 (5th Cir. 1989); <u>accord</u> <u>Cazier v. Thaler</u>, Civ. Action No. SA-09-CV-727, 2010 WL 518241, at *6 (W.D. Tex. Feb. 3, 2010). Moreover, considering that petitioner stood accused of raping a child, counsel's advice strikes the undersigned as particularly sound. Such an accusation is one that a typical juror might well find particularly appalling and heinous. Given that reality, one could reasonably expect that such a client might fare better – or at least no worse – in a bench trial.

And that leads to yet another hurdle petitioner faces with such a claim: a petitioner bears the burden to demonstrate that it is reasonably likely that "a *different* factfinder (i.e. a jury)" would arrived at a different outcome. <u>Green</u>, 868 F.2d at 178; <u>accord</u> <u>Bourgeois v. Bergeron</u>, Civ. Action No. 09-3185, 2009 WL 5088756, at *13 (E.D. La. Dec. 23, 2009) ("[A] petitioner is not entitled to federal habeas corpus relief based on [a claim that defense counsel was ineffective for advising petitioner to waive his right to a jury trial] unless he demonstrates that a different factfinder, i.e. a jury, would have rendered a different verdict."). Given the victim's compelling testimony in this case, there is no reasonable probability that a jury would have reached a different verdict.

With respect to his second claim, petitioner contends that his counsel was ineffective for failing to argue that trying him for both aggravated rape and sexual battery constituted double

jeopardy. As the state courts correctly noted, the flaw in that claim is that there simply was no double jeopardy violation.

The protection against double jeopardy is enshrined in the Fifth Amendment and made enforceable against the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794 (1969); Rogers v. Lynaugh, 848 F.2d 606, 611 (5th Cir. 1988). The United States Supreme Court has explained:

> That guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted), overruled in part on other grounds, Alabama v. Smith, 490 U.S. 794, 802-03 (1989); accord Department of Revenue v. Kurth Ranch, 511 U.S. 767, 769 n.1 (1994).

Petitioner appears to be contending that his case falls within the third category. However, as noted, that category applies only if two crimes are deemed to be "the same offense." And the United States Fifth Circuit Court of Appeals has explained:

> We apply the Blockburger v. United States[, 284 U.S. 299 (1932),] test to determine whether two different statutes punish the same offense. Blockburger requires us to compare the two statutes at issue and ask "whether each provision requires proof of an additional fact which the other does not". If either statute contains no element not also found in the other statute, the statutes "fail" the Blockburger test and the defendant may not be punished under both of them "in the absence of a clear indication of contrary legislative intent". Two statutory offenses need not be identical to constitute the same offense for double jeopardy purposes. The Blockburger inquiry focuses on the statutory elements of the offenses, not on their application to the facts of a specific case before the court. Thus, the question is not whether *this* violation of [the first statute] also constituted a violation of [the second statute], but whether *all* violations of the former statute constitute violations of the latter.

United States v. Singleton, 16 F.3d 1419, 1422 (5th Cir. 1994) (footnotes omitted).

Here, petitioner was charged with both aggravated rape of a juvenile (based on the "penile/vaginal intercourse"[28]) pursuant to La. Rev. Stat. Ann. § 14:42 and sexual battery of a juvenile (based on the "touching and/or digital penetration"[29]) pursuant to La. Rev. Stat. Ann. § 14:43.1.  Under the versions of the Louisiana statutes in effect at the time of the offenses,[30] those were distinct offenses with different elements.  For example, aggravated rape required both that the offender and the victim had "anal, oral, or vaginal sexual intercourse" with penetration[31] and that the victim be under the age of twelve, while sexual battery required neither.  On the other hand, sexual battery required both that the act include "the intentional touching of the anus or genitals of the victim"[32] and that the offender not be the victim's spouse, elements not found in the aggravated rape statute.  Because of the differing elements, not **all** violations of the aggravated rape statute would also be violations of the sexual battery statute or *vice versa*.  For instance, an offender who engaged in oral sexual intercourse with a ten-year-old child could be convicted of aggravated rape but not sexual battery.  On the other hand, an offender who intentionally touched the vagina of a fourteen-year-old without penetration could be convicted of sexual battery but not aggravated rape. Therefore, the offenses were not the "same" under <u>Blockburger</u>.

Petitioner argues that double jeopardy was nevertheless violated because the two acts here (the penile penetration of the vagina and the subsequent digital touching of the vagina) both arose

---

[28] State Rec., Vol 1 of 8, Indictment (Count 1).

[29] <u>Id.</u> (Count 2).

[30] Both statutes have since been amended in various respects.

[31] The "penetration" requirement is included by virtue of the statutory definition of "rape."  La. Rev. Stat. Ann. 14:41(B) ("Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.").

[32] "*Touching*, not penetration, is the critical element in the crime of sexual battery."  <u>State v. Davis</u>, 514 So. 2d 757, 758 (La. App. 2d Cir. 1987).

from "the same course of alleged conduct."[33]  However, that simply was not determinative.  So

long the as offenses were distinct, it was immaterial for double jeopardy purposes that they arose

from the same course of conduct.  See, e.g., United States v. Morgan, 437 F. App'x 354, 355-56

(5th Cir. 2011); Johnson v. Terrell, No. 95-30339, 1995 WL 581839, at *1 (5th Cir. Sept. 6, 1995).

Where, as here, the petitioner's underlying double jeopardy argument is meritless, counsel

cannot be deemed ineffective or failing to make that argument.  Neal v. Cain, 141 F.3d 207, 214-

15 (5th Cir. 1998) ("To demonstrate ineffective assistance of counsel, … [petitioner] must prove

that his counsel's errors were prejudicial, in that they had an adverse effect on his defense.

[Petitioner's] double jeopardy argument … [is] without merit.  Accordingly, his counsel's

purported failure to press [the issue] was not prejudicial.").  Therefore, petitioner's second claim

likewise fails.

With respect to his third claim, petitioner contends that his counsel was ineffective for (1)

failing to secure and call an expert witness for the defense and (2) failing to request a Daubert

hearing with respect to the testimony of the state's expert witness.

The great bulk of this claim concerns the first purported failure – the failure to secure an

expert witness for the defense.  Petitioner suggests a variety of ways that he believes such expert

testimony would have aided the defense;[34] however, the fatal flaw with respect to the claim is that

he has failed to meet his burden of proof.  Concerning such claims, the United States Fifth Circuit

Court of Appeals has held:

> Claims that counsel failed to call witnesses are not favored on federal
> habeas review because the presentation of witnesses is generally a matter of trial
> strategy and speculation about what witnesses would have said on the stand is too

---

[33] Rec. Doc. 1, p. 6.
[34] Rec. Doc. 1-1, pp. 30-33.

> uncertain.  For this reason, **we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.**  This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (emphasis added; citations, quotation marks, and brackets omitted); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

In this case, petitioner presented no evidence, such as an affidavit from a proposed expert witness, demonstrating that he or she was available to testify at the trial and would in fact have testified in a manner beneficial to the defense.  Therefore, he obviously failed to meet his burden of proof with respect to this claim.  See, e.g., Day, 566 F.3d at 538 (noting that petitioner had not presented evidence that proposed expert "was available to testify at trial, that he would have done so, or that he would have testified in accord with the opinions and conclusions he states in his affidavit"); Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) ("[Petitioner] did not present any evidence or allegations concerning what the expert would have stated, or what results the scientific tests would have yielded.").

The second part of the claim concerns a passing comment that counsel was purportedly ineffective for failing to request a hearing pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), in connection with the testimony of Carrie Paschall, the state's expert

witness.  Ms. Paschall testified that she was a "child forensic interviewer."[35]  Without objection

by defense counsel, Paschall was offered and accepted as an expert in the fields of child forensic

interviewing and disclosure patterns.[36]    Petitioner argues that defense counsel should have

requested a <u>Daubert</u> hearing in connection with Paschall's testimony on "delayed disclosure" and

Child Sexual Abuse Accommodation Syndrome ("CSAAS") phenomena.[37]

     "The United States Supreme Court's decision in <u>Daubert</u> interprets the Federal Rules of

Evidence and, as a result, does not bind the states." <u>Bridges v. Tanner</u>, Civ. Action No. 17-1925,

2019 WL 3774446, at *7 (E.D. La. Aug. 12, 2019).  Nevertheless, in <u>State v. Foret</u>, 628 So. 2d

1116 (La. 1993), the Louisiana Supreme Court adopted the <u>Daubert</u> test to ensure that scientific

testimony or evidence admitted at trial is reliable.  <u>See</u> <u>State v. Chauvin</u>, 846 So. 2d 697, 700-01

(La. 2003).  In <u>Chauvin</u>, the Louisiana Supreme Court explained:

>     To assist the trial courts in their preliminary assessment of whether the
> reasoning or methodology underlying the testimony is scientifically valid and can
> properly be applied to the facts at issue, the Supreme Court suggested the following
> general observations are appropriate:  1) whether the theory or technique can be
> and has been tested; 2) whether the theory or technique has been subjected to peer
> review and publication; 3) the known or potential rate of error; and 4) whether the
> methodology is generally accepted by the relevant scientific community.  <u>Daubert</u>,
> 509 U.S. at 592-594, 113 S.Ct. at 2796-2797.  In <u>Foret</u>, we adopted these
> "observations" as a helpful guide for our lower courts in considering this difficult
> issue.  <u>Foret</u>, 628 So.2d at 1123.

<u>Chauvin</u>, 846 So. 2d at 701.

     The Court can easily dispose of petitioner's contention that counsel was ineffective for

failing to request a <u>Daubert</u> hearing as to Paschall's CSAAS-based testimony.  It is true that, in

---

[35] State Rec., Vol. 5 of 8, transcript of October 15, 2013, p. 46.

[36] <u>Id.</u> at p. 47.

[37] Rec. Doc. 1, p. 8; Rec. Doc. 1-1, pp. 31-32.

Foret, the Louisiana Supreme Court noted the problematic nature of CSAAS-based evidence, and that court ultimately "determined that CSAAS-based evidence should be admissible only for the limited purpose of explaining, in general terms, certain reactions of a child to abuse that would be used to attack the victim/witness' credibility." Foret, 628 So.2d at 1131. However, the admissibility of CSAAS-based evidence simply was never an issue in this case, **because no such evidence was presented**. In fact, Paschall made no reference whatsoever to CSAAS in her testimony and ventured no opinion at all regarding the victim's credibility vel non. Where, as here, the expert witness presented no CSAAS-based testimony, then counsel cannot be ineffective for failing request a Daubert hearing concerning such testimony. See, e.g., Perez v. Vannoy, Civ. Action No. 20-2429, 2021 WL 4312422, at *13 (E.D. La. June 4, 2021), adopted, 2021 WL 4311138 (E.D. La. Sept. 22, 2021).

Petitioner's contention that counsel was ineffective for failing to request a Daubert hearing as to Paschall's testimony regarding delayed disclosure is minimally stronger, in that Paschall did at least briefly **mention** delayed disclosure in her testimony.[38] Nevertheless, the contention is still meritless for the following reasons.

First, Paschall's testimony regarding delayed disclosure was brief and uncontroversial – she merely acknowledged that it is not uncommon for victims to delay disclosing that they have been sexually abused, and she gave reasons why child victims in particular might delay such disclosures, opining:

> Children, especially young children, when something occurs to them, they're not always sure what to do. They're not sure if they're going to be believed, protected, blamed. And they're not – oftentimes, understanding of the actual act,

---

[38] State Rec., Vol. 5 of 8, transcript of October 15, 2013, pp. 50-51.

itself, and the seriousness of it.  And sometimes it takes them getting a little older, learning a little more to understand the significance of what happened to them.[39]

However, Paschall then offered no opinion as to why the victim in this case delayed disclosing the abuse – or even an opinion as to whether the victim's allegations of abuse were credible.  Rather, aside from offering the foregoing rather common-sense observation regarding reasons some victims delay disclosure, Paschall did little more than testify that (1) she had in fact interviewed the victim in the case and (2) the videotape of that interview (which was played at trial) accurately documented the interview.[40]

Second, relatedly, petitioner was in no way prejudiced by the lack of a Daubert hearing with respect to that testimony.  Because of the limited nature of Paschall's testimony, a Daubert hearing was hardly critical.  Moreover, in any event, it must be remembered that this was a bench trial, and Daubert hearings are less vital in such trials.  See, e.g., Whitehouse Hotel Limited Partnership v. Commissioner of Internal Revenue, 615 F.3d 321, 330 (5th Cir. 2010) ("[T]he importance of the trial court's gatekeeper role [concerning admission of expert testimony] is significantly diminished in bench trials, … because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence.").  Therefore, even if defense counsel had insisted on a Daubert hearing with respect to Paschall's testimony, it is not reasonably likely the result in this case would have been different.

For all of these reasons, it is clear that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court

---

[39] Id. at p. 51.
[40] Id.

of the United States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

### B.  Excessive Sentence

In his fourth and final claim, petitioner argues that his ten-year sentence on the sexual battery conviction was excessive; he does **not** challenge his sentence on the aggravated conviction as excessive.[41]  However, as explained *supra*, this Court lacks subject-matter jurisdiction to consider claims concerning only the sexual battery conviction, because petitioner's sentence on that conviction fully expired prior to this application's filing.  Accordingly, this claim need not be further addressed.

### RECOMMENDATION

It is therefore **RECOMMENDED** that petitioner's federal habeas corpus claims challenging his conviction for sexual battery of a juvenile be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

It is **FURTHER RECOMMENDED** that petitioner's federal habeas corpus claims challenging his conviction for aggravated rape of a juvenile be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

---

[41] Rec. Doc. 1, pp. 9-10; Rec. Doc. 1-1, pp. 34-36.

result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>,

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 31st day of May, 2022.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**